CHARLES F. DUNHAM & another *vs.* ANN E. GANNETT, administratrix.

Dukes County.    Oct. 25, 1878. — Jan. 11, 1879.    ENDICOTT & LORD, JJ., absent.

A bond described a bound of a way as running from a certain point, " on a straight line to the shop of A." There was evidence that at the date of the bond there was an outside platform extending along the front of A.'s shop, built at the same time with it, and resting on the same foundation. *Held,* that, if the platform was part of the building, the line ran to the corner of the platform, and that whether the platform was a permanent or a temporary part of the building was immaterial.

CONTRACT on a bond, executed to the plaintiffs by Abraham Osborn, the defendant's intestate, and conditioned to keep and cause to be kept at all times thereafter open and unobstructed, for the benefit of the plaintiffs, their heirs and assigns, a certain way in Edgartown, described as " beginning at the northeast corner of a lot of land belonging to said plaintiffs;" (thence by various courses and distances which it is unnecessary to state;) " thence in an easterly direction to the south corner of William P. Chadwick's shop; thence on a straight line to the shop of Joseph V. Kelley; then across the way aforesaid to the first bound."

After the decision reported 124 Mass. 151, the case was tried in the Superior Court, before *Rockwell,* J., who allowed a bill of exceptions in substance as follows :

The question for the jury was whether a fence erected by Joseph V. Kelley, claimed by him to be on the line between his land, adjacent to the shop mentioned in the bond, and the way defined in the bond, was within the way and an obstruction thereof. There was evidence tending to show that at that locality an ancient way of varying width had existed for a long period prior to giving the bond, and that Osborn had included it in a warranty deed to Kelley, bounding him upon the plaintiffs' land which lay on the other side of the way; that Kelley fenced the way, resulting in a suit between him and the plaintiffs, which was adjusted by Osborn giving the bond. As to the line of the ancient way, as defined by buildings and fences on the side where Chadwick's and Kelley's shops stood, evidence was offered on both sides and was conflicting. The line called for in the bond was a straight one from the south corner of William P. Chadwick's shop to the "shop" of Joseph V. Kelley, and the principal point in dispute was whether by the term "shop" was included a platform which extended from the entire front of the shop about four feet toward the way. The shop fronted on the way, as also did Chadwick's shop on the same side. If by the term "shop" was meant only the upright main part of the building, the fence was within the line, and an obstruction of the way.

The defendant introduced evidence tending to show that the fence, which the plaintiffs claimed to be an obstruction, was erected on the straight line extending from the south corner of Chadwick's shop to the outer or southwest corner of this platform nearest the way; that Kelley's shop was built about seventy years ago in the following manner: The whole structure rested on piles driven into the ground, upon which rested certain timbers called stringers or lower sills, which were mortised into the piles. On these stringers rested the main or upper sills, into which were built and mortised all the upright walls of the building; the stringers or lower sills extended out in front toward the way beyond the upper sills about four feet, and upon them the platform was built. The building was designed and afterwards used for a cabinet-maker's shop, and the platform was built for the purpose of placing the furniture made inside, out to dry. It was about three feet high originally, but had been raised with the building to about six feet high, giving room for persons to pass

under it into a basement room under the original building. The plaintiffs introduced no evidence as to the method of constructing the shop and platform, but the evidence was conflicting as to whether it had thus been raised before the bond was given. The jury viewed the locality and the building inside and out. The defendant's evidence tended to show that it had been so raised, and that of the plaintiffs that it had not, until several years afterwards. It had been entirely removed about five years ago. There was other and conflicting evidence as to the original location of both shops and the width of the platform, the defendant's evidence tending to show that it was but about two or three feet wide.

The defendant requested the judge to instruct the jury as follows: "1. The words of description in the bond are to be construed as defining and determining the bounds of the established way referred to in said bond, and not as creating a new way. 2. If the jury find that the platform was built with the shop and for use in connection with it in the manner described by the plaintiff's witnesses, then the expression in the bond 'to the shop of Joseph V. Kelley' must mean to the southwest corner of the platform (meaning the outer corner on the side next to Chadwick's shop)."

The judge declined to give these instructions, but instead thereof instructed the jury as follows: "The plaintiffs' theory is that there has been a breach of the bond given by Osborn to the plaintiffs. You have the bond which gives a description of a certain way, which Osborn bound himself and his representatives should be kept open substantially as described in the bond. If there is a permanent obstruction of that way, there is a breach of the bond, otherwise not. An important question is, where was the south corner of Joseph V. Kelley's shop. The plaintiffs' theory is that it was the corner of the upright building, and not of the platform. The defendant's theory is that it was the corner of the platform. The corner of the upright building being some distance, from four to six feet, from the corner of the platform, if the plaintiffs' theory is correct there has been a breach of the bond, but if the defendant's theory is correct there has not been. The question which of these corners was the one described in the bond is a question for the jury. If the platform was a part of the

building in the same manner as a porch, veranda, piazza or outside flight of stairs would have been, then the corner of the platform is the corner spoken of in the bond. But if the platform was merely a platform made and used, not as a permanent part of the building, like a porch, veranda, piazza or outside flight of stairs, but only as a temporary convenience to the tenants of the building, then the 'south corner' did not mean the corner of the platform, but the corner of the upright part of the building. The precise question of fact, then, for the jury to decide, upon this part of the case, is, which kind of platform was this. The jury will decide this question upon the whole of the evidence. The plaintiffs contend that, even if this bound was the corner of the platform, yet the fence is further out into the way. To aid in ascertaining what are the bounds of the way described in the bond, the jury may consider the evidence which has been introduced in relation to the way existing before the bond was given."

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*J. Brown*, for the defendant.

*G. Marston*, for the plaintiffs.

AMES, J. If the platform, at the date of the bond, was a part of the building, then the corner of the platform is the corner spoken of in the bond, and the defendant's theory of the case is the correct one. When this case was before the court on a former occasion, this was adjudged to be the rule which should govern the new trial. 124 Mass. 151. In the judgment then given, an attempt was made to illustrate the proposition by likening the platform, in the mode of its attachment to the building, to a "porch, veranda, piazza or outside flight of stairs." It has unfortunately happened at the second trial, that what was meant merely as an illustration has apparently been taken as a literal definition; and a distinction has been made between temporary and permanent parts of the building, which was far from our intention. The question for the jury was, where at the date of the bond was the corner of the building, and not where was the corner of the "upright part" of the building. We did not anticipate that the ingenuity of counsel would devise any such subdivision of the building into different parts, as seems to have been carried out at the new trial. If the platform had been a movable chattel, so

that it could be taken away bodily and replaced at pleasure, the case would be different. But if at the date of the bond it was in fact a part of the building, the fact that some subsequent occupant had no occasion to use it, or saw fit to take it away, ought not to be permitted to obscure the question as to the true course of the boundary line.

As the question was submitted to the jury upon a test which was not the true one, the defendant's

*Exceptions must be sustained.*